## BONDS OF OFFICERS OF THE OHIO NATIONAL GUARD.

[Circuit Court of Wood County.]

THE AMERICAN BONDING COMPANY OF BALTIMORE V. EDWARD S. BRYANT.

Decided, January 12, 1906.

*Militia—Bonds Required of Officers—Mandatory Character of Section 3104—Liability of Officer for Premium—Release Obtained, How.*

Where a continuing bond is given by an officer of the Ohio National Guard, as required by Section 3104, he is liable for the premium thereon until release is obtained by the furnishing of another bond, or by returning the property in his possession to the state, or turning it over to his successor in office after he has been duly qualified.

WILDMAN, J. (orally); PARKER, J., and HAYNES, J., concur.

In the case of the American Bonding Company of Baltimore against Edward S. Bryant, the plaintiff in error, who was also plaintiff below, brought suit in a justice's court against Edward S. Bryant to recover the sum of $12 as an annual premium upon a contract for an official bond furnished by the plaintiff company to said Bryant.

It appears by the record that Bryant was a colonel in the Ohio National Guard and, as such, was required to furnish an official bond to the state under the provisions of Section 3104 of the Revised Statutes of Ohio.

In the justice's court, judgment was rendered in favor of the defendant, and a proceeding having been brought in the court of common pleas for a reversal of that judgment, the judgment was affirmed by said court, whereupon a petition in error was filed in this court for a further review of the proceedings. The facts involved in this case were presented in the justice's court by an agreed statement of facts, certain exhibits and concessions embodied in the bill of exceptions. The statement is brief and I will read it:

"The application of the defendant to the plaintiff to become surety for him as Colonel of the Second Regiment, Ohio National Guard, on the 16th day of June, 1903, which paper is marked 'Exhibit A' and made a part hereof; also a certified copy of the bond given by plaintiff to the state of Ohio on behalf of the defendant as Colonel of the Second Regiment Ohio National Guard, which certified copy is marked 'Exhibit B' and made a part hereof.

"It is also admitted by the parties that the defendant prior to the 16th day of June, 1904, notified the plaintiff that he did not desire the renewal or continuation of said bond theretofore given by said plaintiff for him.

"It is also admitted that the defendant was and still is Colonel of the Second Regiment, Ohio National Guard, and that he has given no bond to the state of Ohio since the giving of the bond, a certified copy of which is a part of this evidence and marked 'Exhibit B,' and that his term of office has been continuous from the time of giving said bond on June 16th, 1903, and that the defendant herein is required by the laws of the state of Ohio to give a bond to said state for the faithful performance of his duties.

"All objections as to the competency of 'Exhibit A' and 'B' are waived, and such exhibits are admitted to be the best evidence of the facts therein recited.

"It is agreed between the parties hereto that the above and foregoing evidence and admissions were all the evidence submitted by either party in the trial of this cause."

It was on the basis of these concessions and the facts as so shown, that the judgment was rendered in the justice's court. The bond, which is attached, is indefinite as to its duration. The claim of the defendant below is that, having given notice to the bonding company that he did not longer require a bond, he was thereby relieved from any further liability for annual premiums, but the language of the bond discloses no termination to the liability of the bonding company until the responsibility of the colonel for state property for the care and return of which the bond was given, should be ended. The language of the bond is (reads):

"The condition of the above obligation is such that, whereas, the said Edward S. Bryant, who is Commandant of 2nd

Infantry, Ohio National Guard, has, as Commandant of said regiment, been intrusted with property of the state of Ohio, including all ordnance stores, clothing, camp and garrison equipage, in possession of said organization, together with public funds coming into his hands as such officer, and for such state property and funds as may hereafter be issued or placed in his charge as said commanding officer; now if the said property or public funds, or either, shall be delivered to the said Edward S. Bryant, and the same shall be safely kept and at all times in readiness for immediate use, in a place appropriate for that purpose, and no part of said public property permitted to be used or taken from such place of deposit for any other purpose than for the use and benefit of such organization or other lawful public service, and if said property and funds shall be turned over to his successor in office (first causing new bonds to be executed by his successor, to the acceptance of the Adjutant-General), or shall be returned to the state in good condition, and shall at all times be subject to the orders of the governor of Ohio, then this obligation shall be void, otherwise to be *and remain*" [and I emphasize these words] "in full force and virtue in law."

The application on the part of Colonel Bryant for the furnishing of this bond by the bonding company does not, in our judgment, vary the character of the bond itself; it does appear in the application that the bond sought was to be of a certain character, but the important inquiry is as to what was the bond which was received and accepted—the bond furnished by the bonding company to Bryant, and by Bryant and his surety furnished to the state. Upon one page of the application we find this question, after some other preliminary ones: "How long to run?"; and the answer is "Indefinitely, one year at a time, renewed." Possibly this means that it is to run for an indefinite term upon the annual premium which is provided for in another part of the application, and that it is understood in advance that it is to be renewed so long as Bryant's liability to the state shall continue. The language, however, is altogether vague in this respect. The bond itself fixes the liability of both principal and surety to the state. The bond itself is the best evidence of the duration of the liability of the surety for the principal; and the bond provides that it is to be

*and remain* in force until the property for which Colonel Bryant shall become responsible shall either be returned to the state or turned over to his successor in office, who must be duly qualified by the giving of his own bond.

The application promises to pay an "annual premium in advance, of twelve dollars" (using the words of the application). Now it is said that Col. Bryant notified the bonding company before the expiration of the year that he did not wish to renew. Suppose that this bond had been a promissory note upon which he had obtained as surety the signature of the bonding company, surely the surety would not be relieved of liability until the note was discharged in some way, and no notice given by him prior to the payment of the note or its extinguishment in some way would relieve the surety from liability.

It was said in argument before us that before the expiration of the year the Commander-in-Chief, I suppose the Adjutant-General of the state had countermanded the order requiring colonels to furnish bond; but nothing of this kind appears in the record. On the contrary, as already read from the bill of exceptions, it was agreed that the defendant herein is required by the laws of the state of Ohio to give a bond for the faithful performance of his duties, and in another part, that he is still Colonel of the Second Regiment and that he has given no bond to the state of Ohio since the giving of the bond in controversy. But, even if it had appeared upon the record that the Commander-in-Chief had relieved him of any duty to give bond or had attempted to do it, it would seem to us that the Commander-in-Chief had no power to make such an order as that, provided the colonel is still custodian of property of the state, because of this statute that requires the bond to be given. It is true that the amount of the bond, the penalty of the bond, is to be fixed in the case of a colonel of a regiment by the Commander-in-Chief, the language of the statute (Section 3104, Revised Statutes) reading:

"All officers commissioned under this title, in whose hands shall be placed public moneys or other public property, shall

give bond in the sum not to exceed four thousand dollars for a company commander, and five thousand dollars for a regimental quartermaster, and all other officers such sums as the Commander-in-Chief may direct, conditioned faithfully to account for all public moneys and property which they may receive. The Commander-in-Chief may at any time increase the sum so prescribed.''

There is no provision that he may, or may not, require bonds from regimental colonels or other officers. The statute is mandatory in this requirement that bonds shall be given by all officers in whose hands may be placed public moneys or property.

It is enough, however, so far as this matter is concerned, to base our judgment upon the agreed statement admitting the continued liability of Colonel Bryant to give a bond to the state, and when we consider this admission it seems to us that the liability to pay the annual premiums is substantially admitted with it, because it is said that he has furnished no other bond, and there is nothing in the record to indicate that whatever property was in his hands at the time when the bond was given has been turned over to the state. Manifestly, it has not been turned over to his successor in office, because he has none; he still holds the office which he held when the bond was given.

Did he have any property in his hands? The bond says so; it recites that he has been entrusted with property of the state of Ohio, including all ordnance stores, clothing, etc., and from a consideration of the whole matter we think that until the bonding company is in some way exonerated from further liability on the bond, the bond is to be treated as a continuing basis for the annual premium. He agreed to pay twelve dollars as an annual premium, and it was evidently designed that it was to be paid so long as the bond should be continued in force.

We know of no way by which the bonding company could get a cancellation of the bond and a release of its liability; but it is entirely in the power of Colonel Bryant to bring about such release, either by furnishing another bond, by returning the property in his hands to the state, or by turning it over

to his successor in office after he has been duly qualified.  By any one of these three ways he may get a release from the bond under inquiry, but until he does that it is our judgment that his liability for the annual premium continues, and so holding, we must necessarily reverse the judgment of the justice of the peace finding in favor of the defendant, and also of the common pleas court which affirmed the judgment of the justice, and it is so ordered.

*Edward Beverstock* and *Earl D. Bloom,* for plaintiff.

*Geo. H. Jones* and *C. R. Painter,* for defendant.